**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 5:25-cr-31-KDB |
| | ) | |
| | ) | **FACTUAL BASIS** |
| v. | ) | |
| | ) | |
| GENE CHRISTOPHER ACUFF | ) | |
| | ) | |

NOW COMES the United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1. GENE CHRISTOPHER ACUFF (ACUFF) was a resident of Mooresville, North Carolina, within the Western District of North Carolina.

2. Company A was a publicly traded retailer with stores in the United States, Canada, and Mexico.

3. ACUFF was employed by Company A for approximately nine years as a senior manager whose duties included reviewing property tax assessments on Company A stores, primarily in North Carolina. ACUFF worked for Company A from his home in Mooresville, North Carolina, from in and around March 2020 until on or about September 4, 2024.

4. In the course of his duties, ACUFF would employ real estate appraisers and other professionals to evaluate tax assessments on Company A stores. Companies providing

services to Company A would submit invoices for their services, which were paid through an electronic application. ACUFF was entrusted with access to Company A's bill pay system and had the authority to authorize payments to its vendors. Once authorized, Company A would send checks to vendors via the United States mail at the addresses listed on their invoices.

## Count One

5. Beginning no later than January 30, 2020, and continuing until on or about June 25, 2024, ACUFF devised and executed a scheme and artifice to defraud and to obtain money from Company A by materially false and fraudulent statements, and by concealment of material facts, including the following:

   a. ACUFF created five businesses with names related to real estate appraisal and tax consulting services, which he registered with the North Carolina Secretary of State:

      i. Appraisal Consulting Services,

      ii. Fee Simple Valuations,

      iii. Tax Appraisal Services,

      iv. Tax Valuation Services, and

      v. Property Tax Consulting Services.

   b. ACUFF submitted fraudulent and materially false invoices to Company A in the names of his real estate appraisal and tax consulting businesses for appraisals and other services which were never in fact provided to Company A.

   c. ACUFF authorized payment of such fraudulent and materially false invoices on Company A's bill pay system, which caused approximately 234 checks to be delivered through the U.S. mails to a box he leased at a commercial mail service in Mooresville, North Carolina.

   d. ACUFF collected checks totaling more than $1.9 million from the mailbox he leased in Mooresville, North Carolina, and deposited them into accounts he opened at various banks in the names of Appraisal Consulting Services, Fee Simple Valuations, Tax Appraisal Services, and Tax Valuation Services.

   e. ACUFF transferred the proceeds of Company A checks deposited into the accounts of his real estate appraisal and tax consulting businesses to his personal bank accounts for his personal benefit and use.

6. On or about April 20, 2022, ACUFF for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and to obtain money from

2

Company A by materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, knowingly caused to be delivered by mail and by private and commercial interstate carrier a check payable to Appraisal Consulting Services in the approximate amount of $9,500 according to the direction thereon.

### Count Two

7. ACUFF caused Company A to mail checks payable to Appraisal Consulting Services, Fee Simple Valuations, Tax Appraisal Services, and Tax Valuation Services to an address in Mooresville, North Carolina, which checks were obtained by false and fraudulent representations, including that they were legitimate vendors that provided service to Company A, when in fact they were straw companies controlled by ACUFF.

8. Between on or about March 23, 2021, and July 18, 2024, ACUFF deposited 44 Company A checks totaling $411,859.36, proceeds of his mail fraud scheme, into bank accounts in the names of Appraisal Consulting Services, Fee Simple Valuations, Tax Appraisal Services, and Tax Valuation Services. Those accounts were solely funded with checks obtained by fraud from Company A.

9. Between on or about September 20, 2021, and July 1, 2024, ACUFF transferred $201,000.00, proceeds of his mail fraud scheme, from accounts in the name of Appraisal Consulting Services, Fee Simple Valuations, Tax Appraisal Services, and Tax Valuation Services to his personal accounts at Ally Bank.

10. On or about July 12, 2022, ACUFF knowingly engaged, attempted to engage, and caused others to engage in a monetary transaction by, through, and to Ally Bank, a financial institution affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, to wit: a wire transfer in the amount of approximately $171,515.00 from Ally Bank to the Bank of Oklahoma.

11. This wire transaction involved the proceeds of a specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code, Section 1341.

12. While conducting and attempting to conduct this wire transaction, ACUFF knew that the transaction involved the proceeds of checks fraudulently obtained from Company A and, therefore, represented the proceeds of some form of unlawful activity.

13. At all times pertinent to the offenses charged in the Bill of Information, ACUFF acted intentionally, knowingly, and with the intent to defraud.

RUSS FERGUSON
UNITED STATES ATTORNEY

*[signed] Michael E. Savage    7/3/2025*

Michael E. Savage
Assistant United States Attorney

3

## Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis, the Bill of Information, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Information, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis.

*Anthony J. Scheer*
Anthony Scheer, Attorney for Defendant

DATED: 6/30/25

4